SCHNEIDER, APPELLANT, *v.* OHIO YOUTH COMMISSION,
APPELLEE.

[Cite as Schneider v. Ohio Youth Comm. (1972),
31 Ohio App. 2d 225.]

(No. 71-299—Decided January 25, 1972.)

*Mr. Jerry F. Venn,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. Walter E. Carson,* for appellee.

HOLMES, J. This appeal presents for this court's consideration the timely topic or question of personal appearance and grooming, and more specifically the anatomical

subject which has been written and opined about, discussed and debated, and the subject of Broadway and traveling productions—hair.

As in most instances, the fact upon which the legal issues depend are much more mundane than the discussion of the legal principles involved. But the facts and circumstances of the matter must be reviewed in order to apply the law to the facts.

The appellant, William E. Schneider, is 30 years old, married, and possesses a Bachelor of Science degree from the University of Cincinnati. Until June 23, 1970, appellant had been employed for some four years and five months as field counselor in the Cincinnati regional office of the bureau of juvenile placement, Ohio Youth Commission.

Mr. Schneider's duties, according to his own account, consisted of the after-care of juveniles from the time of commitment through placement, parole and final discharge, and included personal contact with the wards, parents, juvenile courts, schools, churches, neighbors and potential employers of such wards. As stated by counsel in appellant's brief: ''His primary purpose is the re-socialization of juveniles looking toward eventual discharge.''

The record of this matter shows that on March 16, 1970, the bureau of juvenile placement, acting through its chief, Mr. Wendell Metz, issued what was entitled ''BJP Memorandum No. 1'' to all staff members. The subject of such memorandum was ''dress and appearance.'' For a more complete understanding of the setting within which the plot of the story progresses, I believe it necessary to quote the more pertinent portions of the memorandum as follows:

''As you know, most of our work is directly related to the community and, as a result, we are often in contact with segments of our society which are legitimately concerned with the role models that our staff represent to the children. In recent months, I have had a number of persons call me to raise questions as to the appearance of our staff. It is my hope and, I am sure, yours, that no child would ever be penalized because he was judged by the ap-

pearance of a worker. However, these inquiries, primarily, indicated deep concern about how the dress or appearance of staff members might even be making it more difficult for a child on parole to make a satisfactory adjustment. As a result, I am instructing that our dress be in keeping with the high degree of professional standards which we are striving to meet in the Bureau. Appropriate dress, during working hours, includes a sport coat or suit coat and tie for male workers. Female workers should dress in such manner as would project a professional and ladylike appearance. All staff should be neat at all times, with hair neatly groomed.

More immediate to the matters occasioning Mr. Schneider's problems herein was a visit to Mr. Schneider's office by Mr. Metz who later observed in a letter dated May 28, 1970, that Mr. Schneider's "shaggy and unkempt hair was not in keeping with the professional standards of this agency." Mr. Metz continued in his letter:

"In any event, I am officially requesting that you have your hair moderately trimmed so that it will be neat and well kept. I expect that you will comply to this request by Monday, June 8, 1970, avoiding the need for any further action. Your cooperation in this matter would be appreciated."

The appellant expressed his very definite and negative reaction to such memorandum and the official request for compliance by way of a letter dated June 4, 1970, which stated:

"I do not feel that it would be in keeping with my personal integrity to comply with your official request that my hair be cut to a length you feel is acceptable * * *."

Basic among the appellant's reason for not complying with the memorandum were those stated in his letter as follows:

"The 'acceptable' length of hair for men has varied radically throughout the years and I doubt very much that anyone's efficiency on his job has been correlated to the length of his hair; furthermore, what is 'acceptable' now was not five years ago and may not be five years hence.

"However, that which is 'acceptable' is determined by one or ones who feel they are in a position of legislating on what are essentially matters of personal preference. Such legislation is inconsistent with one's civil liberties and rights as an individual."

On June 11, 1970, Mr. Metz followed with a letter stating, in effect, that since it was obvious that Mr. Schneider did not intend to comply with the memorandum, he was ordering him as follows: "[H]ave your hair trimmed and * * * improve your standards of personal grooming so that your overall appearance will be neat and acceptable to me as chief of the Bureau of Juvenile Placement. You are directed to comply with this order by June 23, 1970 * * *."

The appellant did not comply with such order, and a formal order of suspension for six days was issued on June 23rd—such order being on the basis of insubordination.

Mr. Schneider appealed the suspension to the state personnel board of review, which affirmed the order of suspension of the appointing authority.

Mr. Schneider appeals to this court, assigning, in essence, the following errors:

1. The decision of the state personnel board of review, affirming the order of suspension, is not supported by reliable, probative and substantial evidence.

2. The order of Mr. Metz, chief of the bureau of juvenile placement, as contained in the letter dated June 11, 1970 pertaining to the length and appearance of appellant's hair, is unconstitutional and violates the appellant's rights of freedom of speech and self-expression guaranteed by the First and Fourteenth Amendments to the United States Constitution and Title 42 U. S. C. A. Section 1983 of the Civil Rights Act.

3. Said order violates the right of appellant's privacy as contained in the bill of rights of the United States Constitution.

4. Said order constitutes cruel and unusual punishment as prohibited by the Fourteenth Amendment to the United States Constitution.

5. Said order violates the appellant's right of due pro-

cess as guaranteed by the Fourteenth Amendment to the Constitution of the United States "in that said order is arbitrary, capricious, unreasonable and not related to any substantive evil which the state of Ohio or any political subdivision thereof has a right to prevent and is not reasonably related to the valid governmental function of administrator of the juvenile correctional system of the state of Ohio."

At the outset, we state that in our view one generally may, within the exercise of his individual rights and while not violating the rights of others, effect such mode of dress or personal grooming, including style of hair, as he so desires.

Today, hair styling and length of hair, especially among males, has become to a marked degree a form of outward display of one's personality and life style.

However, the question of whether the length of one's hair may be considered as an expression within the concept of free speech as protected by the First Amendment to the Constitution of the United States, as contended by appellant, is not a matter upon which even our federal courts are in agreement.

In *Breen* v. *Kahl* (C. C. A. 7, 1969), 419 F. 2d 1034, the United States Court of Appeals, Seventh Circuit, held that the right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the First Amendment and that such protection was applicable to the states through the due process clause of the Fourteenth Amendment.

Taking the other view, the United States Court of Appeals of the Sixth Circuit, in *Jackson* v. *Dorrier* (C. C. A. 6, 1970), 424 F. 2d 213, held that the wearing of long hair by school pupils did not constitute an expression within the concept of free speech.

It is conceivable that in certain instances one's unique hair style might be intended as an expression of an idea, philosophy or point of view and, as such, may be considered to be an expression within the concept of free speech.

In a similar vein, the Supreme Court of the United

230

States found the wearing of arm bands by high school students in protest of the Vietnam War to be an expression within the concept of free speech as protected by the First Amendment to the Constitution of the United States. *Tinker* v. *Des Moines Independent Community School District* (1969), 393 U. S. 503.

However, unless there is specifically shown to be such an expression of philosophy, idealism or point of view through a style of one's hair, no protection under the First Amendment may successfully be claimed. No such showing was present in this case.

Even though we may assume for purposes of discussion that in, certain instances, hair styling may be considered as a constitutionally protected form of expression, the Constitution does not establish an absolute right to a free expression of ideas. Such constitutional right may be infringed by the state through law or administrative rule or regulation if there are compelling reasons to do so. *Ferrell* v. *Dallas Independent School District* (C. C. A. 5, 1968), 392 F. 2d 697.

However, in the enactment of laws or the promulgation of rules or regulations concerning these areas of individual rights, appropriate regard must be given to substantive and procedural due process as prescribed by the Fourteenth Amendment to the Constitution of the United States. Such laws or regulations must be reasonable and related to the evil which the state is attempting to prevent, and there must also be the appropriate right of the party affected to be heard; see *Laucher* v. *Simpson* (1971), 28 Ohio App. 2d 195, where the Court of Appeals for Knox County, in upholding a school dress code concerning the length of hair, stated as follows at page 199 of the opinion:

"We recognize that the rights of a school child are as important to him and society as those of an adult. Indeed, what we hold is that these rights may be curtailed only to give effect to the more important rights of the tax paying public in the maintenance of discipline and good order in their public schools and then, under the 14th Amend-

ment to the United States Constitution, only after due process of law has been afforded.''

In determining whether regulations concerning the style and length of hair and manner of dress are lawful and reasonable, each case must be decided in its own particular setting and factual background, and within the context of the entire record before the court. *Ferrell* v. *Dallas Independent School District, supra.*

The facts in the instant matter relate to a professional male employed as a social worker within the regional office of the bureau of juvenile placement. Such assignment involved counseling as part of a process looking toward the resocialization or rehabilitation of boys and girls on placement from the Ohio Youth Commission institutions.

The duties and activities involved within this professional position are the assisting in the planning, placement, and after-care of each boy and girl assigned to the counselor, from the time of the commitment through placement, and parole to final discharge.

The counselor, in performing his functions, has continuing personal contact with not only the boys and girls but the parents, neighbors, schools, churches, potential employers, courts, and others in the community.

It is reasonable to conclude that a counselor, such as this appellant, who is in a close and continuing relationship with his wards, and who is professionally administering guidance and social strengths to his wards, would quite naturally, in such process, exert a marked degree of influence upon and over his wards.

A judge of a Juvenile Court, wherein the appellant made numerous appearances on behalf of his juvenile wards, testified at the appellant's hearing before the personnel board of review.

Judge Benjamin Schwartz, Judge of the Common Pleas Court of Hamilton County, Ohio, Juvenile Division, a very well known and respected juvenile judge, testified as to his professional view concerning the relationships of counselors to their wards and to the court, and to the public, and more particularly in the latter regard, the ef-

fect that such relationships may have on the employer segment of the community. Judge Schwartz also testified as to his view of a counselor's personal appearance in this regard.

First, the judge stated that he was not opposed per se to youngsters or adults having long hair. However, the judge stated that where such persons are involved with youngsters such as those within the charge of the juvenile placement bureau, such persons "should have proper attire and proper appearance." The judge made it clear that when he alluded to the objectionable long hair, he referred to the extreme length that extended below one's coat collar.

Also, Judge Schwartz commented that appropriate hair length was a requisite of proper decorum for his courtroom and he considered the appellant's appearance to be less than appropriate for his courtroom appearances.

Queried further as to the basis of his objection to long hair as worn by juvenile counselors, and more particularly this appellant, Judge Schwartz stated that one of the most important factors in the rehabilitation of juvenile wards was obtaining proper employment for such wards.

The judge testified that, based upon his personal experience and knowledge, it was his opinion:

"Most, [or] a great percentage of the business world is prejudiced against youngsters having long hair. Now if they are prejudiced against youngsters having long hair of this kind, the chances of getting a job are less."

Also, Judge Schwartz stated that a juvenile ward tends to emulate the dress and appearance of his counselor and, such being the case, the resulting appearance of the ward emulating a counselor with extremely long hair would make it more difficult for him to obtain a job and, thence, difficult to rehabilitate him.

The evidence presented in this matter shows that the chief of the bureau directed a letter dated May 28, 1970, to the appellant, officially requesting the appellant to "have his hair moderately trimmed so that it will be neat and well-kept."

On June 4, 1970, the appellant replied by a letter in which he indicated he would not comply with the request. Such letter was followed by a direct written order to comply with the bureau memorandum by a certain date. The appellant again flatly refused to comply.

We feel that the appellant was given ample opportunity to comply with this memorandum and the following specific orders.

The Ohio Youth Commission and, more specifically, as applicable to this case, the bureau of juvenile placement, stands in *loco parentis* to the youth under its control and quidance. In measuring the appropriateness and the reasonableness of the regulations as against the constitutional protection of the First and Fourteenth Amendments, the courts must give full credence to the role and purposes of our youth rehabilitation programs and the professional people who are working closely with such youth in these programs. They must also give due recognition to the fact that there are real differences between what would be reasonable restraints within the orbit of the youth commission programs, and what would be reasonable and lawful as applied to the streets and walks of life generally.

One may have a constitutional right to wear his hair as he wishes free of state control, but there is no corresponding right to work anyplace that he might desire while adorned in a hirsute style of his choice.

Drawing upon the language of the *Ferrell* case, that which so interferes or hinders the state in providing the best elements for the rehabilitation of its delinquent youth may be eliminated or circumscribed as needed, even when that which is condemned is an exercise of a constitutionally protected right.

Although we may agree that in many respects the appellant's hair length and style may not reduce his professional effectiveness, we feel that, in the totality of the circumstances, there was a reasonable basis for the issuance of the order by Mr. Metz, chief of the bureau of juvenile placement.

There is support for the reasoning advanced by Judge Schwartz and Mr. Metz that the youth counselor stands as an example or role model for his wards and, as such, should set the type of example which would best facilitate the rehabilitation of such wards.

We agree that gainful employment is an essential part of the rehabilitation process, and that personal appearance either facilitates or hinders the youth in obtaining such employment. We must again agree with Judge Schwartz that the potential for employment is to an appreciable degree lessened by lengthy locks.

Another element to be considered here is that there is no mere misunderstanding, or a shading of difference, as to the length or style of hair to be worn by the appellant in his work for the state.

The appellant is not stating that he feels that cutting his hair at collar length or one-half inch above the collar is unreasonable and because of such unreasonableness that he would not comply.

Contrarily, the appellant is saying that any such regulation is unreasonable and that he will not comply with it, whatever the nature of the order. Such refusal on the part of this employee constitutes insubordination which again establishes an unfortunate example for the wards under this counselor's influence and control.

Therefore, we hold that the "BJP Memorandum No. 1," as issued by the chief of the bureau of juvenile placement, and the order of suspension, as issued thereon to this appellant, were not unconstitutional nor unreasonable, nor did they violate this appellant's rights of freedom of speech as guaranteed by the First and Fourteenth Amendments or Title 42 U. S. C. A., Section 1983, of the Civil Rights Act.

Nor did such order violate the appellant's right of privacy.

Nor did such order constitute cruel and unusual punishment.

Nor did the order violate the substantive due process rights of this appellant as guaranteed by the Fourteenth Amendment to the United States Constitution.

The decision and order of the personnel board of review affirming the order of the chief of the bureau of juvenile placement, suspending this appellant, is supported by reliable, probative and substantial evidence, and the same is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and WHITESIDE, J., concur.