Cazimer **KALEMBA** et al., Plaintiffs,

v.

Edmund **TURK** et al., Defendants.

No. C 72-1221.

United States District Court,
N. D. Ohio, E. D.

Jan. 18, 1973.

Benjamin B. Sheerer, Cleveland, Ohio, for plaintiffs.

Wayne C. Dabb, Asst. Law Director, and Nicholas DeVito, Asst. Law Director, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This dispute arose as the result of the exclusion of plaintiff Kalemba and other members of his party from attending Cleveland City Council meetings with armbands bearing the symbol of their party. The Court took jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. On January 15, 1973, after a hearing on plaintiffs' motion for a preliminary injunction, the Court enjoined defendants and those acting under their direction from prohibiting or preventing, during the pendency of this lawsuit, plaintiffs' attendance at Cleveland City Council meetings because of their party armbands. The Court further noted that this Opinion would be issued, setting forth the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiffs, members of the Cleveland Chapter of the National Socialist White People's Party, attended a meeting of Cleveland City Council in September, 1972, in uniforms consisting of brown shirts, black ties, swastika tie tacks, black stockings, black shoes and armbands bearing a black swastika in a white circle on a red background. After plaintiffs sat quietly in the Council gallery for about an hour, they marched in formation to the rear of the gallery and toward an exit on the opposite side.

As the plaintiffs marched across the rear, several members of Council turned their swivel chairs toward the plaintiffs to watch them. The Council President interrupted the proceedings to ask plaintiffs to leave. After plaintiffs had complied with this request, the President banged the gavel and continued with Council business.

Subsequently, when plaintiffs attempted to enter later Council meetings, they were told by a Cleveland policeman that they would be permitted to enter only if they removed their armbands. On these occasions, they entered Council chambers wearing their uniforms with the exception of the armbands.

During the past year, numerous persons have attended Council meetings with clothing or badges symbolizing philosophical or political viewpoints. In particular, persons attended meetings with political buttons, clerical collars and other indicia of religious affiliation, symbols of peace, and military and police uniforms with flags. At no time was there any indication that these buttons, badges, and armbands produced actual violence or a substantial basis for predicting violence in Council chambers.

In fact, there is no indication that the buttons, badges, or armbands materially disrupted the Council business. Moreover, the momentary distraction of Council members on one occasion appeared to have been caused only by the swastika symbol itself and not by the wearing of badges or buttons generally. Thus, those Council members who recognized the Party uniform without the armband were also distracted by the presence of Party members in uniform without the armbands.

Under Rule 2 of the Rules of Order Governing the Council of the City of Cleveland, all Council meetings are public. There is no written rule which prohibits the wearing of symbols in Council chambers. The President of Council is, however, under the impression that all symbols are excluded under a "practice" adopted under his authority to maintain order. During the past year, the President made a determination as to what came within the scope of the "practice" when the situation occurred but did not recall having discussed the "practice" with anyone or having designated the perimeters of that "practice."

## CONCLUSIONS OF LAW

■ The wearing of armbands expressing political concepts is protected as an exercise of free speech under the First Amendment to the United States Constitution. Tinker v. Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Thus, while the right to wear such armbands may be limited and regulated in certain respects, that right must be zealously guarded.

■■ The expression may be limited, for example, when it constitutes "fighting words". The "fighting words" exception has, however, been limited to "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971). A likelihood of violent action may be shown by a history of disturbances resulting from a particular kind of expression. Guzick v. Drebus, 431 F.2d 594 (6th Cir. 1970), cert. denied 401 U.S. 948, 91 S.Ct. 941, 28 L.Ed.2d 231 (1971). However, in this case, there is no indication that violence is likely to occur or has ever occurred in the past in response to any badges or armbands or in response to these particular armbands. Thus, this case does not come within the "fighting words" exception.

■ The expression may also be regulated in situations where it would disrupt the purpose of the institution involved and where the regulation is clear and narrowly drawn. Guzick, supra; N. A. A. C. P. v. Button, 371 U.S. 415, 432, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). It may not, however, be limited in an area accessible to the public simply because it produces the displeasure which normally accompanies an unpopular viewpoint. Cohen, supra, 403 U.S. at 21, 22, 91 S.Ct. 1780; Tinker, supra, 393 U.S. at 509, 89 S.Ct. 733. In this case, there is no indication either of disruption caused by the armbands or of a written regulation or even a narrowly construed practice of excluding buttons, badges and armbands from the chambers. Thus, this case does not involve a reasonable regulation of freedom of speech.

■ Defendants urge the Court to carve out a new exception under the First Amendment for expressions which are derogatory to a particular race on the grounds that this country has adopted a policy of racial equality. Certainly, the Court would not contest that this nation is firmly committed to the policy of racial equality and that the swastika symbol appears to symbolize opposition to that policy. However, the Court rejects the proposition of limiting free speech to those who will support the national policy, however important. Indeed, the result of such a limitation would be the curtailment of all speech

related to black power and superiority as well as, in this case, the advocates of white superiority.[1]  Bond v. Floyd, 385 U.S. 116, 134, 135, 87 S.Ct. 339, 17 L.Ed. 2d 235 (1966).

### CONCLUSION AND ORDER

It is ironic that it is the legislators of the City, those who should most clearly comprehend the value of free debate and the expressions of conflicting political concepts, who are here seeking to exclude certain unpopular political expressions.  The even more surprising aspect of the case is that the greatest harm which could be shown to result from the wearing of the armbands at issue was that the Council members, who would normally face the front, would experience emotional displeasure if they turned their chairs to the rear to view the spectators.  Moreover, the displeasure shown is one which was not related to the wearing of armbands themselves but to the unpopular ideas symbolized by the armbands.

There is little doubt that the swastika symbol represents values which are abhorred in the nation as a whole.  However, to permit a legislative body to pass on those ideas which may be expressed by the clothing or badges of those attending public meetings might lead to the kind of political repression that this country has taken pains to prevent.  As Justice Harlan explained in *Cohen:*

"The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours.  It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.  See Whitney v. California, 274 U.S. 357, 375–377, 47 S.Ct. 641, [648–649], 71 L.Ed. 1095 [1105, 1106] (1927) (Brandeis, J., concurring).  To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance.  These are, however, within established limits, in truth necessary side effects of the broader enduring values which the process of open debate permits us to achieve."  403 U.S. at 24, 25, 91 S.Ct. at 1787, 1788.

██ The Court rules that the exclusion of plaintiffs while wearing their party armbands denies plaintiffs' expression of speech and that such prohibitions would result in irreparable damage.  Furthermore, the Court finds by clear and convincing evidence that there is a substantial likelihood of plaintiffs' success on the merits.  The Court, therefore, enjoins the parties to the action, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, pending final determination of this lawsuit, from preventing or prohibiting plaintiffs' attendance in the galleries of Cleveland City Council chambers because of their armbands.[1]

It is so ordered.

---

1.  While defendants cite Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L. Ed. 919 (1952), in support of their contention that racially degrading speech is not protected, the Court disagrees and considers that case as one limited to libelous statements, a situation not presented by this case.

1.  Because defendants have not indicated a risk of monetary loss from this Order, the Court finds that no security is necessary under Rule 65 of the Federal Rules of Civil Procedure.