CITY OF CINCINNATI, APPELLEE, *v.* TAYLOR ET AL.,
APPELLANTS.

(No. 73-71—Decided November 21, 1973.)

*Mr. Thomas A. Luebbers,* city solicitor, *Mr. Ralph E. Cors* and *Mr. John F. Peyton, Jr.,* for appellee.
*Mr. Douglass L. Custis* and *Mr. Oscar R. Long,* for appellants.

WILLIAM B. BROWN, J. This court is asked to determine the constitutionality of the Cincinnati prowling ordinance. The question is presented to this court with a record that fails to indicate what conduct of appellants violated the ordinance. We agree with Justice Black who, in *Coates* v. *Cincinnati* (1971), 402 U. S. 611, 617, said: "It is a matter of no little difficulty to determine when a law can be held void on its face and when such a summary action is inappropriate. * * *" We are mindful that in a situation such as is presented here we have a grave responsibility not to act prematurely—to enter into a consideration of the case only with the clearest justification.

Nevertheless, we will consider appellants' contentions as "* * *aiming to prevail by reliance upon an attack upon the constitutionality of the ordinance *taken on its face.*" *State* v. *Aucoin* (Me. 1971), 278 A. 2d 395, 396.

The Cincinnati ordinance provides, in pertinent part:

"No person shall prowl in any public or private place at a time, in a manner or under circumstances which warrant a reasonable man to believe that the safety of persons or security of property in the surrounding area is threatened.

"The following circumstances may be considered in determining whether a reasonable man would believe that the safety of persons or security of property in the surrounding area is threatened:

"(a) The flight of a person upon the appearance of a police officer.

"(b) Attempted self-concealment by a person upon the appearance of a police officer.

"(c) The checking by a person other than the owner, tenant or agent of the owner or tenant, of doors, windows or other means of access to buildings, houses or vehicles.

"'Unless flight by the actor or other circumstances makes it impracticable, a police officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any belief of threat to the safety of persons or security of property, by requesting him to iden-

tify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the police officer did not comply with the preceding sentence.

"For the purpose of this section, the following words and phrases shall have meanings respectively ascribed to them:

" 'Prowling' shall include the following activities: lingering, lurking, or standing idly around."

Section 901-P10 is unconstitutionally void for vagueness, because it does not provide adequate standards by which activity can be determined as legal or illegal.

The standard is inadequate "* * * to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States* v. *Harriss* (1954), 347 U. S. 612, 617.

The ordinance is also inadequate in providing guidelines for law enforcement officials charged with its enforcement. Such boundless discretion granted by the ordinance encourages arbitrary and capricious enforcement of the law. It provides a convenient instrument for "harsh and discriminatory enforcement by prosecuting officials, against particular groups deemed to merit their displeasure * * *." *Thornhill* v. *Alabama* (1940), 310 U. S. 88, 97-98.

The ordinance essentially prohibits prowling in circumstances "which warrant a reasonable man to believe that the safety of persons or security of property * * * is threatened." It elucidates "prowling" by describing it as "lingering, lurking, or standing idly around." It is unnecessary to consult Webster's dictionary to know that the words "lingering" and "standing idly around" have no sinister connotations. Nor does "lurking" necessarily connote an evil element. One definition of "lurk" given by Webster's Third New International Dictionary is "to move furtively or inconspicuously." Another definition is, "to

lie in ambush." However, such elucidation of the proscribed activity describes no certain, definite action or type of action that would stamp such activity with an element of criminality. So a person merely waiting on a street corner for a ride would not have "fair notice" that his activity constituted "prowling."

The qualifying clause of "prowling," which requires that people or property be threatened, does not save the ordinance; for this qualification still permits the law enforcement officer to make a judgment that is without adequate guidelines and is too subjective.

There are many ordinary acts that could be criminally proscribed, depending upon the interpretation of an individual officer. This violates the mandate of *Harriss* that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

The vague language of Section 901-P10 can be contrasted with the language of other loitering ordinances, such as the one upheld in *Seattle* v. *Jones* (1971), 79 Wash. 2d 626, 488 P. 2d 750, which provided, in pertinent part, that it shall be unlawful for anyone:

"(g) * * * To loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.

"For the purpose of this section, a 'known prostitute

or panderer' is a person who, within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted of violating any ordinance of the city of Seattle defining and punishing acts of soliciting, committing, or offering or agreeing to commit prostitution.''

In *Seattle* v. *Jones,* the forbidden conduct included, besides loitering, actions that indicated the person was soliciting for prostitution. The necessity that physical acts occur which are commonly associated with solicitation gives a person a clear standard by which he knows whether his conduct is forbidden or not.

In this case, the Court of Appeals concluded that the language of the ordinance is definite and that preventive arrest is desirable, stating:

''Clearly, the intent of the ordinance before us is to prevent the commission of serious crime by thwarting a criminal plan before it reaches the stage of an attempt. That prowling foreshadows burglary is a truth so firmly bedded upon experience that it is beyond argument. Most thieves reconnoiter before they break and enter, and most prowlers are bent on mischief. Only the doggedly naive libertarian would contend that security of person and property would not be best served by deterring the prowler.''

The best answer to that concern of the Court of Appeals was made in *Papachristou* v. *Jacksonville* (1972), 405 U. S. 156, 168, where the court held a vagrancy ordinance unconstitutional. There, Justice Douglas decried ''* * * the unfettered discretion it places in the hands of the Jacksonville police.'' He stated further: ''Caleb Foote,* an early student of this subject, has called the vagrancy-type law as offering 'punishment by analogy.' * * * Such crimes, though long common in Russia, are not compatible with our constitutional system. We allow our police to make arrests only on 'probable cause,' a Fourth and Fourteenth Amendment standard applicable to the states as well as to the federal government. Arresting a

---

*Foote, Vagrancy-Type Law and Its Administration, 104 U. Pa. L. Rev, 603,

person on suspicion, like arresting a person for investigation, is foreign to our system, even when the arrest is for past criminality. * * *

"A direction by a legislature to the police to arrest all 'suspicious' persons would not pass constitutional muster. * * *"

In this case, the Court of Appeals relied upon *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163, 168, wherein this court held that:

"* * * the ordinance neither prohibits the lawful exercise of any constitutional right nor escapes the understanding of any person of 'common intelligence' who desires to obey it." That case is distinguishable, for the reason that the prowling ordinance in the instant case does not provide enough criteria for a "person of 'common intelligence' who desires to obey it." For instance, the activity of window-shopping would fit all the requirements of this prowling ordinance, and a person engaged in such activity would be liable to arrest.

We conclude that the challenged ordinance does not provide adequate standards by which the average person can determine whether his acts are violating it, nor does it provide adequate standards by which law enforcement officials themselves can judge whether other people are violating it. Such a law is unconstitutional on its face and must be declared void for violating this fundamental precept of due process. We agree with the court in *Seattle* v. *Jones, supra,* wherein, at page 629, it said:

"* * * If an ordinance imposes sanctions authorized by language that is doubtful, vague, or uncertain, it violates fundamental concepts of justice and due process of law."

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE and P. BROWN, JJ., concur..

CORRIGAN, J., concurs in the judgment only.