CITY OF CINCINNATI *v.* ADAMS, A. K. A. HARRIS.

(No. 74-02403—Decided November 8, 1974.)

Hamilton County Municipal Court.

*Mr. Paul J. Gorman,* city prosecutor, and *Mr. J. Anthony Sawyer,* for plaintiff.

*Mr. Anthony J. Brueneman, Jr.,* for defendant.

GORMAN, J. This matter is before the court upon defendant's motion to dismiss the complaint on grounds that Section 909-5 of the Cincinnati Municipal Code, under which he is charged, violates defendant's right of freedom of expression guaranteed by the First and Fourteenth Amendments to the United States Constitution and is also unconstitutionally vague. Section 909-5, C.M.C., provides as follows:

"No person within the city of Cincinnati shall appear in a dress or costume not customarily worn by his or her sex, or in a disguise when such dress, apparel, or disguise is worn with the intent of committing any indecent or im-

moral act or of violating any ordinance of the city of Cin-. cinnati or law of the state of Ohio.

"All of the surrounding circumstances and behavior of the individual charged with the violation of this section may be considered as relevant in regard to showing the existence of the required intent.

"Whoever violates this section shall be guilty of dressing for illegal or immoral purposes, a misdemeanor of the fourth degree."

On February 2, 1974 the defendant was standing in a parking lot dressed in a blouse, brassiere and woman's slacks. He wore a woman's wig and earrings and carried a purse. Police had this area under surveillance due to complaints from residents concerning soliciting prostitutes in this neighborhood. An undercover police cadet approached the defendant in the parking lot, and a discussion ensued in which defendant asked if the cadet wanted a date. Some discussion relative to money followed, but this topic changed to other unrelated subjects. When he was leaving the parking lot, police officers arrested the defendant and filed the complaint now before the court which alleges that defendant "with intent to commit an immoral act * * * did appear in a disguise, contrary to and in violation of Section 909-5 * * *."

A strong presumption exists in favor of the constitutionality of legislation, *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159. Legislation must be sustained as a valid enactment unless it is in "clear and irreconcilable conflict with an express provision of the constitution," *State, ex rel. Price,* v. *Huwe* (1922), 105 Ohio St. 304, 306.

We are called upon in this case to determine whether a transvestite's mode of dress is an expression protected by the First Amendment. Freedom of expression is not limited exclusively to speech. Expression may encompass certain forms of conduct illustrative of "* * * ideas for the bringing about of political and social changes desired by the people," *Roth* v. *United States* (1957), 354 U. S. 476, 484. Conduct protected by the First and Fourteenth Amendments may include one's manner of dress or his per-

sonal grooming if truly representative of a philosophy, an idealism, or a point of view. *Schneider* v. *Ohio Youth Comm.* (1972), 31 Ohio App. 2d 225.

The Supreme Court, however, in *United States* v. *O'-Brien* (1968), 391 U. S. 367, 376, renounced the view that all conduct is deemed to be speech merely because it is intended to be communicative. In *Cox* v. *Louisiana* (1965), 379 U. S. 536, 555, the court stated:

"We emphatically reject the notion * * * that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech."

Whether specific types of dress or grooming are equivalent to an expression is the subject of a conflict in authority. First and Fourteenth Amendment guarantees were extended to protesting students wearing black armbands in *Tinker* v. *Des Moines Community School District* (1969), 393 U. S. 503, to members of a group dressed as brown shirts in *Kalemba* v. *Turk* (N. D. Ohio Ed. 1973), 353 F. Supp. 1101, and to one who wore a jacket bearing a four-letter word in *Cohen* v. *California* (1973), 403 U. S. 15. In sustaining school or government dress codes, however, long hair was held not to be an expression in *Jackson* v. *Dorrier* (C. A. 6, 1970), 424 F. 2d 213, certiorari denied 400 U. S. 850, and in *Schneider* v. *Ohio Youth Comm., supra.*

At the hearing on the motion to dismiss, the defendant did not offer any evidence other than to examine the cadet and arresting officers. In absence of evidence supporting his contention that his costume represented a philosophy or ideal, we cannot conclude in this case that defendant's conduct is an expression within the contemplation of the First Amendment. To be sure, the police power does not confer power upon government to prohibit a man from making a fool of himself, but we agree with those authorities that have held that the legislative body can prohibit cross dressing when it is associated with criminal misconduct and bears a reasonable relation to the public health,

safety, morals and welfare. *Columbus* v. *Zanders* (1970), 25 Ohio Misc. 144; *People* v. *Simmons* (Crim. Ct. 1974), 357 N. Y. S. 2d 362. See, also, former R. C. 2917.45, repealed 1/1/74.

We agree, however, that this ordinance is unconstitutionally vague and violates the defendant's right to due process guaranteed by the Fourteenth Amendment. Although city council is empowered to prohibit certain forms of dress, Section 909-5, C. M. C., is valid only if it provides ascertainable standards of conduct, *Coates* v. *Cincinnati* (1971), 402 U. S. 611. Such standards are inadequate if they fail,

"* * * to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. *United States* v. *Harriss* (1954), 347 U. S. 612, 617.

Whether apparel is proscribed by Section 909-5 depends essentially upon the definition of the words, "not customarily worn." Webster's Third New International Dictionary defines "custom" as, "a form or course of action characteristically repeated under like circumstances: a usage or practice that is common to many or to a particular place or class or is habitual with an individual." Not only does Section 909-5, C. M. C., limit one's dress in public, but its prohibitions reach into the privacy of one's home. It goes so far as to bring under suspect the woman who wears one of her husband's old shirts to paint lawn furniture, the trick or treater, the guests at a masquerade party, or the entertainer. Such a standard is purely subjective and materially fluctuates from person to person. Additionally, the element of an intent to commit an "indecent" or "immoral" act, while so dressed, represents an unascertainable standard. Both terms lack the precise definition necessary to withstand strict construction of a criminal ordinance, *Cincinnati* v. *Wayne* (1970), 23 Ohio App. 2d 91. Such a prohibition depends upon one's moral philosophy and can, for example, include a female Chris-

tian Scientist wearing a tie and pants suit who enters a physician's office seeking treatment.

Obviously, these imprecise terms render Section 909-5, C. M. C., unconstitutionally vague for the same reasons that the Cincinnati prowling ordinance, Section 901-P10, C. M. C., was declared void, *Cincinnati* v. *Taylor* (1973), 36 Ohio St. 2d 73, 75. In the *Taylor* case an ordinance which prohibited prowling "* * * under circumstances which warrant a reasonable man to believe that the safety of persons or security of property in the surrounding area is threatened," was declared void as lacking adequate standards. The Ohio Supreme Court said, at page 75:

"* * * Such boundless discretion granted by the ordinance encourages arbitrary and capricious enforcement of the law. It provides a convenient instrument for 'harsh and discriminatory enforcement by prosecuting officials, against particular groups deemed to merit their displeasure * * *.' *Thornhill* v. *Alabama* (1940), 310 U. S. 88, 97-98."

City council's effort to thwart criminal schemes before they mature into an attempt is, indeed, commendable although the propriety of criminalizing cross-dressing in view of contemporary clothing and hair styles common to both sexes is debatable, *People* v. *Simmons, supra.* Particularly apparent is the fact that absent this ordinance the conduct of a transvestite remains subject to statutes or ordinances prohibiting soliciting (R. C 2907.24), importuning (R. C. 2907.07), pandering obscenity (R. C. 2907.32), public indecency (R. C. 2907.02), trespassing (R. C. 2911.-21) or soliciting rides or hitchhiking (R. C. 4511.51).

Because Section 909-5, C. M. C., fails to provide adequate standards for the average person or for law enforcement officials, it is unconstitutional on its face and void, *Cincinnati* v. *Taylor, supra,* at 78. Accordingly, defendant's motion to dismiss is granted and the defendant is hereby discharged.

*Motion to dismiss granted.*