81 N.J. Super. 315 (1963)
195 A.2d 496
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PEDRO CAEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1963.
Decided November 25, 1963.
*317 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Benedict E. Lucchi argued the cause for the defendant (Mr. Donald R. Conway, on the brief).
Mr. Bruce H. Losche argued the cause for the plaintiff.
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Defendant was convicted of "loitering," in violation of an ordinance of the City of Hackensack, and he appeals.
Defendant argues that the evidence did not justify a finding of guilt, and that, in any event, the section of the ordinance under which he was found guilty is so vague and indefinite as to be invalid. We agree with defendant on both counts.
Officer Scott was the city's only witness. He stated that on October 5, 1962, at about 6 P.M., he observed defendant standing at the corner of Main and Bergen Streets, together with five other men. While seated in his patrol car, he ordered them to "break it up." When they did not move, he parked the car and got out. Upon approaching the group, four left the corner and walked away. Defendant and another person remained standing on the sidewalk.
Scott said the sidewalk was about five to six feet wide and that defendant and his companion stood in the middle of it as they conversed. He said to them: "You fellows are going to have to move off this corner," but they did not move. Instead, defendant said to the officer that he was "just talking with his friends and that he didn't have to move." Scott then placed defendant, but not his companion, under arrest. Scott *318 admitted that when he parked his car only defendant and his friend were on the sidewalk, and that pedestrians were able to pass the two men while they were standing on the sidewalk. Defendant testified that he was on his way to the store when he saw two of his friends and stopped to talk to them. He insisted that there were never more than three people in the group, and it was stipulated at the trial that two witnesses were present in court who would corroborate defendant's testimony if called to the stand.
The ordinance provided, in article II (5), that "No person shall loiter, lounge or sleep in or upon any street, park or public place; or in any public building; or obstruct the access to any public building or any part thereof; or obstruct passage through or upon any public street, park or public place." The ordinance did not define the word "loiter," or set forth any standard by which it could be determined that one was loitering.
The complaint filed in the municipal court charged that defendant "did loiter and lounge in the vicinity of Main and Bridge [sic] streets, public streets in the City of Hackensack, and did obstruct the passage of the public sidewalk at Main and Bridge [sic] streets * * *." The record before us does not reveal whether defendant was found guilty in the municipal court of obstructing "the passage of a public sidewalk," as well as loitering. However, upon trial de novo in the County Court, he was found guilty only of "loitering," which means, in legal effect, that he was acquitted (correctly, we think) of the charge of obstructing the sidewalk. The County Court remitted the $50 fine which had been imposed in the municipal court, and imposed only "$5.00 cost of court."
We begin with the fundamental proposition that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or to stand still. Territory of Hawaii v. Anduha, 48 F.2d 171 (9 Cir. 1931); City of St. Louis v. Gloner, 210 Mo. 502, 109 S.W. 30, 15 L.R.A., N.S., 973 (Sup. Ct. 1908); Pinkerton v. *319 Verberg, 78 Mich. 573, 44 N.W. 579, 7 L.R.A. 507 (Sup. Ct. 1889). An ordinance which proposes to restrict such freedom must contain standards which make it reasonable and prevent arbitrary enforcement. "It is offensive to fundamental concepts of justice and violative of due process of law * * * to impose sanctions for violations of laws whose language is doubtful, vague and uncertain." Maplewood v. Tannenhaus, 64 N.J. Super. 80, 89 (App. Div. 1960). Penal laws must be clear enough so that "* * * all men subject to their penalties may know what acts it is their duty to avoid * * * Before a man can be punished, his case must be plainly and unmistakably within the statute." State v. Gaynor, 119 N.J.L. 582, 584 (E. & A. 1937).
What does "loiter" mean? If it be argued that for lawyers, and for some purposes in the law, the term "loiter" has by usage acquired a certain meaning, "it does not follow that by itself, and without more, such term is enough to inform a citizen of its criminal implications * * *." People v. Diaz, 4 N.Y.2d 469, 176 N.Y.S.2d 313, 151 N.E.2d 871, 872 (Ct. App. 1958).
Black's Law Dictionary (4th ed. 1951) defines loiter as follows:
"To be dilatory; to be slow in movement; to stand around or move slowly about; to stand idly around; to spend time idly; to saunter; to delay; to idle; to linger; to lag behind. * * *."
Similar definitions may be found in nonlegal dictionaries. Obviously, the ordinance is not meant to punish all such loitering, nor could it constitutionally do so, for then every window shopper would be subject to prosecution. Thus, we see that the ordinance is so vague and indefinite that it gives no guide or standard by which to determine who is loitering. This makes so much of article II (5) of the ordinance as relates to loitering invalid. People v. Diaz, supra; Territory of Hawaii v. Anduha, supra; City of St. Louis v. Gloner, supra; City of Akron v. Effland, 112 Ohio App. 15, 174 N.E.2d 285 (Ct. App. 1960); Commonwealth v. Carpenter, 325 *320 Mass. 519, 91 N.E.2d 666, 8 L.R.A. 529 (Sup. Jud. Ct. 1949); Soles v. City of Vidalia, 92 Ga. App. 839, 90 S.E.2d 249, 252 (App. Ct. 1955); State v. Hunter, 106 N.C. 796, 11 S.E. 366 (Sup. Ct. 1890). But see State v. Starr, 57 Ariz. 270, 113 P.2d 356 (Sup. Ct. 1941); Phillips v. Municipal Court of Los Angeles, 24 Cal. App.2d 453, 75 P.2d 548 (D. Ct. App. 1938); 25 Am. Jur., Highways § 189, p. 488.
The city cites People v. Nixson, 248 N.Y. 182, 161 N.E. 463 (Ct. App. 1928); People v. Galpern, 259 N.Y. 279, 181 N.E. 572, 83 A.L.R. 785 (Ct. App. 1932); People v. Carcel, 3 N.Y.2d 327, 165 N.Y.S.2d 113, 144 N.E.2d 81, 65 A.L.R.2d 1145 (Ct. App. 1952); and Tinsley v. Richmond, 202 Va. 707, 119 S.E.2d 488 (1961), appeal dismissed 368 U.S. 18, 83 S.Ct. 137, 7 L.Ed.2d 86 (1961). However, the ordinances in those cases contained standards which made it possible to distinguish between conduct which the state is entitled to punish and that which is essentially innocent. One of the standards employed in each of those cases was the refusal to move after being ordered to do so, which was made an essential element of the offense. As the New York Court of Appeals said in People v. Diaz, supra, in commenting on the earlier New York cases:
"Whenever a conviction for loitering has been upheld, it is because the statute uses the term `loiter' or `loitering' to point up the prohibited act, either actual or threatened. For instance, under the Penal Law loitering is deemed `disorderly conduct' whenever `Any person * * * with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned * * * Congregates with others on a public street and refuses to move on * * * Frequents or loiters about any public place soliciting men' * * *. When a statute is so framed, the term `loiter' or `loitering' takes on significance as a prohibited act, in the violation of which a crime is deemed committed (cf. People v. Hussock, 6 Misc.2d 182, 23 N.Y.S.2d 520, certiorari denied 312 U.S. 659, 61 S.Ct. 733, 85 L.Ed. 1107) and convictions had thereunder have been upheld (cf. People v. Galpern, 259 N.Y. 279, 181 N.E. 572, 83 A.L.R. 785; People v. Gaskin, 306 N.Y. 837, 118 N.E.2d 903)."
The city argues that, even though its ordinance did not make the disobedience of an order to move a condition precedent *321 to guilt, there was such disobedience here, and therefore defendant was loitering and the conviction should be sustained. We see no merit in this contention.
To begin with, the validity of a penal law depends on the language of the law itself. If the law fails to define the crime with sufficient certainty to meet the standards above set forth, police action will not remedy the deficiency. More important, even an ordinance may not punish the mere disobedience of such an order, without regard to the surrounding facts and circumstances. Commonwealth v. Carpenter, supra. In People v. Diaz, supra, the complaint charged that "Defendant was ordered to move on three * * * times and he did refuse each time," yet the conviction, upon an ordinance couched in language similar to that at bar, was declared invalid because it did not contain standards by which to distinguish "between conduct calculated to harm and that which is essentially innocent."
The judgment is reversed.