[No. 41817. En Banc. September 9, 1971.]

THE CITY OF SEATTLE, *Respondent*, v. JOHNAPHRA JONES, *Petitioner*.

*Irving C. Paul, Jr.* and *Roger W. Johnson,* for petitioner.

*A. L. Newbould, J. Roger Nowell,* and *Philip M. King,* for respondent.

WRIGHT, J.—On July 22, 1969, the appellant was observed by police officers engaging unidentified males in conversation on at least three different occasions between 10:15 p.m. and 10:50 p.m. The last gentleman approached by the appellant told the officers she had inquired whether he was "dating." The appellant, upon being approached by the officers, refused to answer questions and was arrested for prostitute-loitering under Seattle City Ordinance No. 73095 as amended by ordinance No. 97316, codified under Seattle City Code as 12.49.010.

On September 19, 1969, the appellant was again observed by officers in the Pike Street area to be engaging unidentified males in conversation. One man was overheard to state, "I don't have any money." When the police approached, the appellant started to run.

In both instances, the arresting officer was aware that the appellant had previously been convicted of prostitution-related crimes. The ordinance in question reads as follows:

It is unlawful for anyone:

(a) To commit or offer or agree to commit an act of prostitution; or

(b) To secure or offer to secure another for the purpose of committing an act of prostitution; or

(c) To knowingly transport a person into or within the city with purpose to promote that person's engaging in prostitution, or procuring or paying for transportation with that purpose; or

(d) To knowingly receive, offer or agree to receive another into any place or building for the purpose of performing an act of prostitution, or to knowingly permit another to remain there for any such purpose; or

(e) To direct another to any place for the purpose of committing an act of prostitution; or

(f) To knowingly in any way aid, abet or participate in an act of prostitution; or

(g) To loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in

determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.

For the purpose of this section, a "known prostitute or panderer" is a person who, within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted of violating any ordinance of the city of Seattle defining and punishing acts of soliciting, committing, or offering or agreeing to commit prostitution.

For the purpose of this chapter "prostitution" means engaging for hire in sexual activity, including homosexual or other deviate sexual relation. (Ord. 73095 § 1 as amended by Ord. 97316 § 1; December 19, 1968).

Seattle City Code 12.49.010.

■ Appellant raises four issues attacking the constitutionality of the ordinance. When the constitutionality of an ordinance is questioned, it will be presumed constitutional. *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522 (1967). One who challenges the constitutionality of a statute carries the burden of proving its invalidity. *State v. Primeau,* 70 Wn.2d 109, 422 P.2d 302 (1966).

■ First, the appellant urges this court to find that section (g) of the ordinance is so vague and indefinite as to be void. We reached such a result in *Seattle v. Drew, supra,* when considering the then Seattle "Abroad at Night Ordinance." We therein held at page 408:

To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment. *Winters v. New York,* 333 U.S. 507, 92 L. Ed. 840, 68 Sup. Ct. 665

(1948). A law that fails to give fair notice of what acts will be punished is violative of due process. *Ibid.* It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or to stand still. The right to be let alone is inviolate; interference with that right is to be tolerated only if it is necessary to protect the rights and the welfare of others. *State v. Caez,* 81 N.J. Super. 315, 195 A.2d 496 (1963); *Territory of Hawaii v. Anduha,* 48 F.2d 171 (9th Cir. 1931); *St. Louis v. Gloner,* 210 Mo. 502, 109 S.W. 30 (1908); *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579 (1889).

An ordinance that restricts such freedom must contain standards that are reasonable and that do not permit arbitrary enforcement. If an ordinance imposes sanctions authorized by language that is doubtful, vague, or uncertain, it violates fundamental concepts of justice and due process of law. *State v. Caez, supra.*

█ The wording of section (g) of ordinance No. 97316 is clear and unambiguous. The ordinance forbids loitering "in a manner and under circumstances manifesting" an unlawful purpose, the unlawful purpose being to induce another to commit an act of prostitution. According to Ballentine's Law Dictionary 1028 (3d ed. 1969), "purpose" is defined as "An intention." Therefore, intent is required under ordinance No. 97316. Section (g) states:

To loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.

For the purpose of this section, a "known prostitute or panderer" is a person who, within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted of violating any ordinance of the city of Seattle defining and punishing acts of soliciting, committing, or offering or agreeing to commit prostitution.

The examples in section (g) are not exclusive, but merely demonstrate some of the types of conduct which may be considered in determining whether an unlawful *purpose* or *intent* is manifested. The ordinance is sufficiently clear so that men of reasonable understanding are not required to guess at the meaning of the enactment. *Seattle v. Drew, supra.*

In the *Drew* opinion, it was suggested that the Model Penal Code, Proposed Official Draft § 250.6 of the American Law Institute, could serve as a guideline in the drafting of a constitutional "Loitering Ordinance." Seattle City Ordinance No. 97316 is similar to sections 250.6 and 251.2 of the Model Penal Code. The City of Seattle followed the guidelines suggested. In so doing, an ordinance was enacted which is clear and unambiguous.

■ The appellant contends in her second assignment of error that Seattle City Ordinance No. 97316 creates an unconstitutional presumption and shifts the burden of proof to the defendant in violation of due process of law. This assignment of error is based upon appellant's assertion that no proof of intent is required by the ordinance. We have already disposed of this contention by finding that intent is specifically required by the ordinance in question. Loitering is an overt act. Intent may be inferred therefrom by conduct when it is plainly indicated as a matter of logical probability. *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Lewis,* 69 Wn.2d 120, 417 P.2d 618 (1966).

■ The third assignment of error alleges the Seattle ordinance violates appellant's privilege against self-incrimination. Under section (g) of the ordinance, a suspect is

allowed to give an account of her suspected activity. This is but one of the circumstances to be considered in determining whether or not a violation of the prostitute-loitering ordinance has occurred. The United States Supreme Court held in *Miranda v. Arizona,* 384 U.S. 436, 477, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) that:

> Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. Illinois,* 378 U.S. 478, 492. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

It seems clear the type of questioning permitted under Seattle Ordinance No. 97316 is not violative of appellant's right against self-incrimination.

The fourth and final assignment of error asserts the appellant was denied equal protection of the law.

■ The appellant argues that the ordinance provides for the introduction of evidence that a person is a "known prostitute" in an arbitrary and capricious manner without any rational basis of distinction between certain classes of possible offenders. If this were correct, there would truly be a violation of the equal protection of the law. See *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 3 L. Ed. 2d 480, 79 S. Ct. 437 (1959). However, the Court of Appeals in *Seattle v. Jones,* 3 Wn. App. 431, 475 P.2d 790 (1970) correctly answered this argument when it pointed out:

> The answer to this final contention is that the ordinance does *not* create two classes of persons which are tried differently. The ordinance applied to *all* persons who violate the ordinance, without regard to their possible status as a "known prostitute."

In any event, evidence of a prior conviction (in the instant case, prostitution) is a circumstance which may tend to prove purpose or intent. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952).

Therefore, the judgment is affirmed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, and SHARP, JJ., concur.

ROSELLINI, J. (concurring in the result)—Although I concur in the result reached by the majority, I do not subscribe to the rationale applied in disposing of the appellant's contention that the ordinance violates her privilege against self-incrimination. It seems to me that the simple answer to the contention is that the ordinance does not place any duty or obligation upon the person charged to explain his conduct but merely permits him to do so if he chooses. There is no compulsion involved. If the appellant had made a self-incriminating statement without having first been warned of her right to remain silent, such statement would not have been admissible against her. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

I do not see the applicability of the quoted language from *Miranda v. Arizona, supra,* and am of the opinion that to quote a statement of the Supreme Court of the United States which was directed to another question entirely (that of the right of police to question witnesses to a crime) tends to becloud the disposition of the issue before the court.

The majority opinion also creates the impression that the court sees no possible ambiguity in Seattle City Code 12.49.010(g). I do find an ambiguity therein, but I don't think it renders the section unenforceable according to its manifest intent. The act forbidden is loitering for the purpose of inducing, enticing, soliciting or procuring "another to commit an act of prostitution." The import of this language is that it is directed, not against loitering for the purpose of soliciting *by* prostitutes but rather against loitering for the purpose of soliciting *of* prostitutes. If this were the intent of the ordinance in fact, the appellant would not be guilty under this section. However, I think the remainder of the section makes it clear that it was the legislative purpose to punish the described kind of loitering

*by* prostitutes and that the section is, therefore, not too vague for enforcement.