[No. 56372-1. En Banc. December 28, 1989.]

THE CITY OF SEATTLE, *Respondent,* v. LEONARD SLACK, *Petitioner.*

*Robert Adelman* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Charlotte E. Clark–Mahoney, Assistant City Prosecutor,* for respondent.

*Nancy L. Talner* on behalf of the American Civil Liberties Union, amicus curiae for petitioner.

DOLLIVER, J.—On June 26, 1986, at approximately 5 a.m., defendant Leonard Slack was arrested and charged with prostitution loitering under Seattle Municipal Code (SMC) 12A.10.010(B). According to the police report, two officers were called to the corner of Pike and Boren Streets in Seattle, an area well known for prostitution activity, by another officer who suspected several known prostitutes were working the area. When the officers arrived, they observed what they thought were two black females standing on the corner. Shortly thereafter, one officer recognized Slack's face from a photo he had seen on the bulletin board at the precinct which had referred to Slack as a known male prostitute. At the time of his arrest, Slack was dressed in a turquoise blouse, jean shorts, and women's shoes. Slack's companion was recognized as Judy O'Neil, also a known prostitute.

The officers observed the following for approximately 15 minutes before arresting both Slack and O'Neil. At 4:45 a.m., Slack and O'Neil walked to the edge of the curb where

a car occupied by a lone male was stopped at a red light. Slack "bent over from the waist up leaning slightly to his right and looked at the driver." O'Neil "made a swinging motion with her hips and looked at the driver." Shortly thereafter, the car drove away. Approximately 2 minutes later, two cars approached and stopped at the red light. One of the cars, a pickup truck, had only one occupant. Slack and O'Neil walked to the edge of the curb and Slack "leaned over the hood of the pickup and looked through the windshield at the driver". O'Neil "swung her hips once and slowly walked alongside the pickup and compact car." When the light changed, the two cars drove off. Approximately 3 minutes later, another car stopped at the light. This time Slack and O'Neil crossed the street and stood in front of the car. Slack "bent over looking at the driver through the windshield." O'Neil "held out her hands in a pleading motion". After O'Neil had a short conversation with the driver, the car drove off. Three minutes later, Slack and O'Neil began watching an approaching vehicle from approximately one block away. As the vehicle drove by, Slack "stood at the edge of the curb[, . . .] bent over and looked at the driver". O'Neil made a "waving motion" at the driver.

Approximately 7 minutes later, O'Neil began walking away from Slack. She was observed having a conversation with a motorist who stopped on the side of the road where she was standing. At this point, the police officers approached Slack and arrested him. They arrested O'Neil shortly thereafter. Slack told the officers he was waiting to be picked up by some friends. On the way to the station, Slack changed his story and told the officers he had driven to the intersection to pick up some friends. Slack also inquired as to how many "contacts" the officers had on him. No argument is presented here that Slack did not make these statements voluntarily.

Slack submitted on the police record alone and was found guilty in the Seattle Municipal Court of prostitution loitering. He appealed his conviction to the King County

Superior Court, alleging the ordinance was unconstitutionally overbroad and that it violated the state and federal equal protection clauses. The Superior Court affirmed Slack's conviction. Slack sought review before the Court of Appeals. In accordance with RCW 2.06.030, it certified the following question to this court:

> Is the Seattle prostitution loitering ordinance, SMC 12A.10-.010, unconstitutional under the Washington and federal constitutions?

We answer this question in the negative and affirm Slack's conviction.

The challenged portion of Seattle Municipal Code 12A.10.010 reads as follows:

> B. A person is guilty of prostitution loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to commit prostitution.
> C. Among the circumstances which may be considered in determining whether the actor intends such prohibited conduct are that he or she:
>> 1. Repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation; or
>> 2. Repeatedly stops or attempts to stop motor vehicle operators by hailing, waiving of arms or any other bodily gesture; or
>> 3. Circles an area in a motor vehicle and repeatedly beckons to, contacts, or attempts to stop pedestrians; or
>> 4. Is a known prostitute or procurer . . ..

Slack first challenges SMC 12A.10.010 as unconstitutionally overbroad under Const. art. 1, § 5 and U.S. Const. amend. 1. He claims the ordinance has a substantial chilling effect on free speech and association rights, particularly those rights relative to persons who are "known prostitutes".

A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989); *Grayned v. Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). Criminal statutes require particular scrutiny and may be facially invalid if they "'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.'" *Huff*, at 925

(quoting *Houston v. Hill,* 482 U.S. 451, 459, 96 L. Ed. 2d 398, 107 S. Ct. 2502, 2508 (1987)).

■ There is no question but that loitering in a public place is constitutionally protected activity. *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). It is also unquestionable that status alone, such as being a "known prostitute", cannot by itself be criminal. *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962). However, SMC 12A.10.010 does not purport to make criminal a person's status, nor does it prohibit constitutionally protected conduct or speech. Instead, the ordinance prohibits an individual, including a "known prostitute", from loitering in a public place while possessing the criminal intent to solicit, induce, entice, or procure another to commit prostitution. SMC 12A.10.010(B). An element of specific criminal intent must exist before an individual can be arrested under the ordinance. This element of specific criminal intent saves SMC 12A.10.010 from being unconstitutionally overbroad.

■ This is not to say a police officer might not arrest an individual for prostitution loitering when in fact the individual does not possess the required mens rea. However, this would be an improper application of the law. The fact that a law may be improperly applied or even abused does not render it constitutionally invalid. *Milwaukee v. Wilson,* 96 Wis. 2d 11, 21, 291 N.W.2d 452, 458 (1980) (holding a prostitution loitering ordinance similar to Seattle's was not unconstitutionally overbroad).

Other jurisdictions are not in agreement as to whether ordinances similar to Seattle's are unconstitutional. One court has, however, stated that prostitution ordinances which include an element of criminal intent have been overwhelmingly upheld by a majority of the states. *State v. Evans,* 73 N.C. App. 214, 218, 326 S.E.2d 303, 307 (1985); *see also People v. Superior Court,* 46 Cal. 3d 381, 758 P.2d 1046, 1055, 250 Cal. Rptr. 515 (1988) (citing cases which have found prostitution loitering ordinances similar to

Seattle's constitutional as well as cases which have held similar ordinances unconstitutional).

Slack compares SMC 12A.10.010 to vagrancy laws which have historically been struck down as overbroad because they cast too large a net in which a substantial amount of protected speech and conduct is caught. We agree laws prohibiting loitering in general suffer constitutional defects because they have an unwarranted chilling effect on a person's freedom of movement and speech. *See Papachristou v. Jacksonville, supra* at 164–65. However, it is analytically incorrect to compare general vagrancy laws with prostitution loitering ordinances such as the Seattle ordinance which includes an element of specific intent, thereby shielding it from being overbroad.

We find Seattle's prostitution loitering ordinance, which requires some showing of specific intent to solicit, induce, entice, or procure another to commit an act of prostitution, is not unconstitutionally overbroad.

Nor do we find SMC 12A.10.010 overbroad under Washington's constitution even though Const. art. 1, § 5 has already been interpreted as providing greater protection for speech than its federal counterpart. *Bering v. Share,* 106 Wn.2d 212, 234, 721 P.2d 918 (1986), *cert. dismissed,* 479 U.S. 1050 (1987). SMC 12A.10.010 prohibits only conduct which is not constitutionally protected, namely, loitering with the intent to solicit for prostitution. Speech directed toward procuring another to commit an act of prostitution does not enjoy constitutional protection. *State v. Carter,* 89 Wn.2d 236, 241, 570 P.2d 1218 (1977).

Defendant Slack also challenges SMC 12A.10.010 as unconstitutionally vague. We have previously upheld Seattle's former prostitution loitering ordinance against a vagueness attack. *Seattle v. Jones,* 79 Wn.2d 626, 488 P.2d 750 (1971). The defendant in *Jones* was arrested twice for prostitution loitering. *Jones,* at 627. On both occasions the arresting officer was aware the defendant had been convicted of prostitution–related crimes. *Jones,* at 627. The defendant challenged the constitutionality of the ordinance,

alleging, among other things, the ordinance was void for vagueness. *Jones,* at 628. In rejecting the vagueness challenge, we stated:

> The wording of [the section] is clear and unambiguous. The ordinance forbids loitering "in a manner and under circumstances manifesting" an unlawful purpose, the unlawful purpose being to induce another to commit an act of prostitution. According to Ballentine's Law Dictionary 1028 (3d ed. 1969), "purpose" is defined as "An intention." Therefore, intent is required under [the ordinance].

*Jones,* at 629.

Further in *Jones,* we addressed the "circumstances" clause of the ordinance (which is similar, but not identical, to the "circumstances" clause in SMC 12A.10.010):

> The examples . . . are not exclusive, but merely demonstrate some of the types of conduct which may be considered in determining whether an unlawful *purpose* or *intent* is manifested. The ordinance is sufficiently clear so that men of reasonable understanding are not required to guess at the meaning of the enactment.

*Jones,* at 630.

Seattle's ordinance has been amended since our decision in *Jones.* However, the amendment was largely grammatical and did not affect *Jones'* application to the case at hand. We therefore affirm our reasoning in *Jones* and hold SMC 12A.10.010 is not unconstitutionally vague. *See also State v. VJW,* 37 Wn. App. 428, 680 P.2d 1068 (1984) (also upholding SMC 12A.10.010 against overbreadth and vagueness challenges).

We next consider whether SMC 12A.10.010 violates state and federal guaranties of equal protection. Defendant Slack argues the ordinance divides persons into groups without regard to intent to commit prostitution, and then applies the law differently to each group. This, in turn, defendant argues chills certain groups, particularly "known prostitutes", from exercising their First Amendment rights.

Equal protection of the laws under the state and federal constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *Harmon v. McNutt,* 91 Wn.2d 126,

130, 587 P.2d 537 (1978) (citing *Herriott v. Seattle,* 81 Wn.2d 48, 500 P.2d 101 (1972)). We reject Slack's equal protection challenge because SMC 12A.10.010 does not establish distinct classes of persons to whom the ordinance applies differently. The ordinance applies equally to *all persons* who possess the requisite criminal intent to solicit for prostitution. *Seattle v. Jones, supra* at 631 (citing *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952)). Being a "known prostitute" by itself is not a crime under the ordinance. It is only one circumstance which may be considered by a police officer in inferring intent or purpose. Furthermore, under ER 404(b), a prior conviction for prostitution loitering may be admissible in order to prove purpose or intent. This is true regardless of whether being a "known prostitute" is one of the circumstances listed under section C of the ordinance, and regardless of whether the arresting officer had knowledge of the prior conviction. *Seattle v. Jones,* 3 Wn. App. 431, 440, 475 P.2d 790 (1970), *aff'd,* 79 Wn.2d 626, 488 P.2d 750 (1971). SMC 12A.10.010 does not violate either the state or federal equal protection clauses.

▮ Slack's final constitutional challenge against SMC 12A.10.010 alleges the circumstances listed under section C create unconstitutional presumptions because they are basic facts from which a jury is to conclude an individual possesses the requisite intent to solicit others to commit prostitution. In *State v. VJW, supra,* the Court of Appeals addressed this issue and held SMC 12A.10.010 did not create an unconstitutional presumption. *VJW,* at 433. In *VJW,* the defendant was arrested for prostitution loitering. She challenged the ordinance as improperly shifting the burden of proof to her, requiring her to prove she was not soliciting. *VJW,* at 433. She also argued the ordinance created an unconstitutional presumption that one who performs the acts described under the circumstances clause of the ordinance is in fact soliciting. *VJW,* at 432. In holding there was no unconstitutional presumption created, the court explained there was nothing in the ordinance requiring the defendant to explain her conduct or to justify her

presence in public. *VJW,* at 433. We concur with the Court of Appeals holding in *VJW* and find SMC 12A.10.010 does not create an unconstitutional presumption.

■ Finally, we consider whether there was sufficient evidence upon which to convict Slack of prostitution loitering. Slack submitted on the police report in Seattle Municipal Court. He now contends the report alone does not contain sufficient evidence to convict him on each element of prostitution loitering beyond a reasonable doubt. Slack has not raised this issue at any other stage of the proceedings. However, this will not bar him from raising the issue for the first time on appeal. Due process requires the State to prove its case beyond a reasonable doubt; thus, sufficiency of the evidence is a question of constitutional magnitude and can be raised initially on appeal. *State v. Baeza,* 100 Wn.2d 487, 488, 670 P.2d 646 (1983) (citing RAP 2.5(a)(3)).

■ Inquiring into the sufficiency of evidence to support a conviction does not require the reviewing court to determine whether it believes the evidence at trial established guilt beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Green,* at 221.

The prosecutor in this case was required to prove Slack remained in a public place with the intent to solicit, entice, induce, or procure another to commit an act of prostitution. SMC 12A.10.010(B). In determining Slack intended to solicit for prostitution, the arresting officers relied on several circumstantial factors. These included (1) their observations of Slack and O'Neil and their activities (previously described in this opinion) for roughly 15 minutes before the arrest was made; (2) the fact Slack was dressed in women's clothing and was observed in an area known for prostitution activity; and (3) one officer recollecting Slack's name and photo on the bulletin board in the precinct which

referred to him as a "known male prostitute". Other evidence included in the police report was the fact Slack initially told the arresting officers he was waiting for a friend to pick him up at the corner, but later changed his story and said he had driven to the corner to pick up some friends, as well as Slack's own inquiry into how many "contacts" the officers had on him prior to his arrest. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of prostitution loitering beyond a reasonable doubt. We hold there was sufficient evidence to convict Slack of prostitution loitering.

We hold SMC 12A.10.010 is constitutional and affirm Slack's conviction under the ordinance.

BRACHTENBACH, DORE, ANDERSEN, and DURHAM, JJ., concur.

SMITH, J. (dissenting in part)—The majority is quite correct in concluding that the Seattle prostitution loitering ordinance, SMC 12A.10.010, is constitutional. I therefore disagree with the majority only on the issue of the sufficiency of evidence in this case to justify the conviction of Petitioner Leonard Slack.

The ordinance provides that "[a] person is guilty of prostitution loitering if he or she remains in a public place and *intentionally solicits, induces, entices, or procures another to commit prostitution.*" (Italics mine.) SMC 12A.10.010(B). It further provides that:

> Among the circumstances which may be considered in determining whether the actor intends such prohibited conduct are that he or she:
> 1. Repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation; or
> 2. Repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture; or

3. Circles an area in a motor vehicle and repeatedly beckons to, contacts, or attempts to stop pedestrians; or

4. Is a known prostitute or procurer . . ..

SMC 12A.10.010(C).

The definition section of the ordinance provides that:

As used in this section:

1. "Commit prostitution" means to engage in sexual conduct for money but does not include sexual conduct engaged in as part of any stage performance, play or other entertainment open to the public.

2. "Known prostitute or procurer" means a person who within one (1) year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted in Seattle Municipal Court of an offense involving prostitution.

3. "Public place" is an area generally visible to public view and includes streets, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots, automobiles (whether moving or not), and buildings open to the general public including those which serve food or drink, or provide entertainment, and the doorways and entrances to buildings or dwellings and the grounds enclosing them.

SMC 12A.10.010(A).

Petitioner Slack entered a plea of "not guilty" in the Seattle Municipal Court and stipulated for submission of the case upon the police report. This authorized the court to consider as evidence all information contained in that report. No other evidence was presented to the court by the City of Seattle or by the petitioner.

The City of Seattle, having charged petitioner with prostitution loitering under SMC 12A.10.010, was constitutionally required under any evidentiary arrangement *to prove by evidence beyond a reasonable doubt* that Leonard Slack on June 26, 1986, committed the offense as charged. The City did not meet that burden of proof with only the police report as evidence.

The police report, in its entirety, is shown below:

862

DRAFT #1 9-79

# SEATTLE POLICE DEPARTMENT
## INCIDENT REPORT

□ INCIDENT ☒ INCIDENT AND. ☒ EST □ ARREST ONLY

INCIDENT NUMBER: 86-299435

□ DO NOT DISCLOSE ☒ NOT DISCUSSED □ DISCLOSE

I HEREBY DECLARE THE FACTS HEREIN REPORTED BY ME ARE TRUE AND CORRECT I UNDERSTAND THAT BY FILING A FALSE REPORT I MAY BE SUBJECT TO CRIMINAL PROSECUTION

□ HAZARD TO OFFICER
— DOMESTIC VIOLENCE

**INCIDENT CLASSIFICATION:** PROSTITUTE LOITERING

**TOOL/WEAPON USED:**

**METHOD OF TOOL/WEAPON USE:**

**LOCATION:** BOREN AVE + PIKE ST

**FIRM NAME:**

**CENSUS:** 083 **BEAT:** E2

**TYPE OF PREMISE (FOR VEHICLES STATE TYPE AND WHERE PARKED):** SIDEWALK

**POINT OF ENTRY:**

**DATE/TIME REPORTED:** 06-26-86 ON VIEW **DAY OF WEEK:** THUR

**DATE/TIME OCCURRED:** 06-26-86 0444-0502 HRS **DAY OF WEEK:** THUR

□ EVIDENCE SUBMITTED □ FINGERPRINT SEARCH MADE □ FINGERPRINTS FOUND □ LAB EXAM REQUESTED

DO NOT DISCLOS

| CODE | C (PERSON REPORTING COMPLAINANT) V (VICTIM) W (WITNESS) | | RACE/SEX/D.O.B (OPTIONAL) | INJURED | HAS USABLE TESTIMONY | HOME PHONE | HOURS |
|---|---|---|---|---|---|---|---|
| NAME (LAST, FIRST, MIDDLE) | SPD ON VIEW | | | | | | |
| ADDRESS | | ZIP CODE | OCCUPATION (OPTIONAL) | | | WORK PHONE | HOURS |
| CODE NAME (LAST, FIRST, MIDDLE) | | | RACE/SEX/D.O.B. (OPTIONAL) | | | HOME PHONE | HOURS |
| ADDRESS | | ZIP CODE | OCCUPATION (OPTIONAL) | | | WORK PHONE | HOURS |

**NAME (LAST, FIRST, MIDDLE):** SLACK, LEONARD

**RACE/SEX/DOB:** B M 07-28-56 **HEIGHT:** 5-11 **WEIGHT:** 165 **HAIR:** BLK **EYES:** BRN **SKIN TONE:** DRK **BUILD:** THI

**ADDRESS:** 1817-23 AVE **HOME PHONE:** 324-7341 **WORK PHONE:** **WORK HOURS:** **OCCUPATION:** TRUCK DRIVER **EMPLOYER/SCHOOL:** NORTHERN ST_

**CLOTHING, SCARS, MARKS, TATTOOS, PECULIARITIES, AKA:** TURQUOISE BLOUSE, BLUE JEAN SHORTS, BLACK WOMENS SHOES **RELATIONSHIP TO VICTIM:**

**UCR NO:** **CHARGE DETAILS INCLUDE ORDINANCE OR R.C.W NUMBER AND CHARGE NARRATIVES:** PROSTITUTION LOITERING 12A.10.010(B) ☒ BOOKED ☐ Y.S.C ☒ KCJ #2 ☐ CITED ☐ K.C.J #1 ☐ K.C.J #3

ADDITIONAL PROPERTY (PROPERTY FORM 5.37.1 MUST BE ATTACHED) ☐ NOTHING TAKEN ☐ UNKNOWN AT TIME OF REPORT ☐ VICTIM FOLLOW UP LEFT

| ARTICLE TYPE | | BRAND NAME | VALUE | |
|---|---|---|---|---|
| □ STOLEN □ RECOVERED | SERIAL NUMBER | OWNER APPLIED NUMBER | | MODEL NUMBER |
| COLOR, SIZE, DESCRIPTION, CALIBER, BARREL LENGTH, ETC. | | | | |

1. ADDITIONAL PERSONS - CODE, NAME, RACE, SEX, D.O.B., ADDRESS, INJURY, HOSPITALIZATION, HOME AND WORK PHONES, HOURS, AND IF DISCLOSURE OF NAME IS PERMITTED
2. ADDITIONAL SUSPECTS - DETAIL INFORMATION IN SAME ORDER AS SUSPECT BLOCK
3. VICTIM'S INJURIES - DETAILS AND WHERE MEDICAL EXAM OCCURRED
4. PROPERTY DAMAGED - DESCRIBE AND INDICATE AMOUNT OF LOSS
5. PHYSICAL EVIDENCE - DETAIL WHAT AND WHERE FOUND, BY WHOM, AND DISPOSITION

6. VEHICLE USED BY SUSPECT AND DISPOSITION
7. NAME, ADDRESS, PHONE NUMBER OF JUVENILE'S PARENT(S)/GUARDIAN(S). NOTE IF CONTACTED AND IF INCIDENT ADJUSTED
8. LIST STATEMENTS TAKEN AND DISPOSITION
9. RECONSTRUCT INCIDENT AND DESCRIBE INVESTIGATION
10. OUTLINE TESTIMONY OF PERSONS MARKED "HAS USABLE TESTIMONY" ON FRONT.

**ITEM NO:**

2 S=2 ONEIL, JUDY BF 07-03-61 505 160 BRN BRN. LIGHT SKIN, LARGE BUILD, 1320 BOREN AVE, RECEPTIONIST, PEOPLE CPA. AKA POWERS, JESSICA, WHITE SHIRT, BRIGHT BLUE OVERALLS, BLACK SHOES AND SHINY BLACK BELT. PROSTITUTION LOITERING. BOOKED IN KCJ#3. 12A.10.010(B)

9 AT APPROX. 0430 HRS 06-26-86 WE WERE ADVISED OVER RADIO BY OFFICER DORAN ≡4834 THAT SEVERAL KNOWN PROSTI-TUTES WERE WORKING THE AREA OF BOREN AND PIKE.

**PRIMARY OFFICER:** T. R. ORR **SERIAL:** 4580 **UNIT:** 441

**SECONDARY OFFICER:** R. N. WILSON **SERIAL:** 5003 **UNIT:** 441

**APPROVING OFFICER:** _____ **SERIAL:** 2869

DISTRIBUTION PRECINCT - ☒A · CRIMES AGAINST PERSONS · JUV ☒COUNT UNIT ** K-9 UNIT PAGE 1 OF

SEATTLE POLICE DEPART\_\_\_NT

| ITEM OR ENTRY | CONTINUATION SHEET (1) OFFENSE AND ARREST (2) FOLLOW-UP (3) TRAFFIC INCIDENT CASE SUMMARY | INCIDENT NUMBER 86-299435 |
|---|---|---|

9 WE DROVE TO THE AREA AND OBSERVED TWO BLACK FEMALES STANDING ON THE SW CORNER OF BOREN AND PIKE. WE IMMEDIATELY RECOGNIZED ONE OF THE SUSPECTS AS A KNOWN MALE PROSTITUTE WHOSE PHOTO AND NAME WAS POSTED ON THE EAST PRECINCT BULLETIN BOARD. WE COULD NOT RECALL THE SUSPECT'S NAME, BUT RECOGNIZED HIS FACE. THIS SUSPECT WAS LATER IDENTIFIED AS LEONARD SLACK. THE OTHER SUSPECT WAS LATER IDENTIFIED AS JUDY ONEIL, ALSO A KNOWN PROSTITUTE. IN A PERIOD OF 16 MINUTES WE OBSERVED THE FOLLOWING ACTIONS BY THE SUSPECTS.

① AT 0445 WE SAW A BRN SEDAN (4DR) S/B ON BOREN. THE SEDAN HAD A SINGLE OCCUPANT OF UNKNOWN RACE. AS THE SEDAN DROVE THROUGH THE INTERSECTION, BOTH SUSPECTS WALKED TO THE EDGE OF THE CURB. SLACK BENT OVER FROM THE WAIST UP LEANING SLIGHTLY TO HIS RIGHT AND LOOKED AT THE DRIVER. ONEIL MADE A SWINGING MOTION WITH HER HIPS AND LOOKED AT THE DRIVE VEH LEFT S/B.

② AT 0447 HRS, A RED DATSUN P/U FOLLOWED BY A COMPACT CAR APPROACHED THE INTERSECTION E/B ON PIKE. THE PICKUP WAS OCCUPIED BY A WHITE MALE BOTH VEHICLES STOPPED FOR A RED LIGHT AT BOREN

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | AM/FICHING |
|---|---|---|---|---|---|---|
| T.R. OPP | 4580 | 441 | R.N WILSON | 9003 | 441 | 2869 |

SEATTLE POLICE DEPART! ' 'T

| ITEM OR 'NTRY | CONTINUATION SHEET (1) OFFENSE AND ARREST (3) TRAFFIC INCIDENT (2) FOLLOW-UP CASE SUMMARY | INCIDENT NUMBER 86-299435 UNIT FILE NUMBER |
|---|---|---|

9 AND PIKE. BOTH SUSPECTS WALKED TO THE EDGE OF THE CURB NEXT TO THE VEHICLES. SLACK LEANED OVER THE HOOD OF THE PICKUP AND LOOKED THROUGH THE WINDSHEILD AT THE DRIVER. ONEIL SWUNG HER HIPS ONCE AND SLOWLY WALKED ALONGSIDE THE PICKUP AND COMPACT CAR.

③ AT 0450 HRS, A BLUE MAVERICK WITH A BLACK VINYL TOP APPROACHED THE INTERSECTION N/B ON BOREN. THE DRIVER WAS A WHITE MALE (ALONE). THE VEHICLE STOPPED FOR A RED LIGHT. SLACK AND ONEIL CROSSED THE STREET AND WALKED DIRECTLY IN FRONT OF THE MAVERICK. AS THEY DID SO, SLACK BENT OVER LOOKING AT THE DRIVER THROUGH THE WINDSHEILD. ONEIL HELD OUT HER HANDS IN A PLEADING MOTION AND CONTINUED WALKING TO THE PASSENGER SIDE. ALTHOUGH OUR VIEW WAS OBSTRUCTED WE COULD HEAR ONEIL TALKING TO THE DRIVER. AFTER ABOUT 15 SECONDS OF CONVERSATION, WE HEARD THE CAR DOOR SLAMMED SHUT AND THE VEHICLE DROVE AWAY N/B ON BOREN.

④ AT 0453 HRS, A SMALL 4-DR SEDAN APPROACHED E/B ON PIKE. THE SUSPECTS BEGAN WATCHING THE SEDAN FROM ABOUT A BLOCK AWAY. BOTH STOOD AT THE EDGE OF THE CURB. AS THE VEHICLE PASSED BY THEM, SLACK AGAIN BENT

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING OFFICER |
|---|---|---|---|---|---|---|
| T. R. ORR | 4580 | 441 | R. N. WILSON | 5003 | 441 | 2869 |

SEATTLE POLICE DEPARTMENT

| ITEM OR ENTRY | CONTINUATION SHEET (1) OFFENSE AND ARREST (3) TRAFFIC INCIDENT (2) FOLLOW-UP CASE SUMMARY | INCIDENT NUMBER 86-299435 UNIT FILE NUMBER |

OVER AND LOOKED AT THE DRIVER. ONEIL MADE A WAVING MOTION WITH HER HAND.

AT 0500 HRS, ONEIL BEGAN WALKING W/B ON PIKE. AS ONEIL NEARED THE FREEWAY OVER PASS, A WHITE PLYMOUTH WA. LIC. OWJ 713 APPROACHED HER E/B ON PIKE. ONEIL STEPPED OUT ONTO THE STREET AND THE VEHICLE STOPPED BESIDE HER. ONEIL APPEARED TO HAVE A BRIEF CONVERSATIO WITH THE DRIVER.

AT THIS POINT, WE ARRESTED SLACK WHO WAS STILL STANDING ON THE SW CORNER. SLACK ASKED WHAT HE WAS BEING ARRESTED FOR. WHEN SLACK WAS TOLD HE WAS BEING ARRESTED FOR PROSTITUTION LOITERING, HE SAID HE WAS JUST WAITING TO BE PICKED UP BY SOME FRIENDS. LATER WHILE BEING TAKEN TO JAIL, SLACK SAID HE HAD JUST DRIVEN TO THE INTERSECTION TO PICK UP SOME FRIENDS. WHILE SLACK WAS BEING ARRESTED, ONEIL SAW US AND RETURNED TO THE SIDEWALK. OFFICER ORR APPROACHED ONEIL AND PLACED HER UNDER ARREST. BOTH SUSPECTS WERE TRANSPORTED TO THE EAST PRECINCT WHERE THE ARREST WAS SCREENED BY SGT HANSON SLACK WAS BOOKED INTO KCJ#2 AND ONEIL WAS BOOK INTO KCJ#3. WHILE BEING TAKEN TO JAIL, SLACK ASKED US HOW MANY CONTACTS WE HAD ON HIM. SLACKS STATEMENT: WERE MADE VOLUNTARILY AND WERE NOT RESPONSES TO QUESTIONS BY US.

| INVESTIGATING OFFICER | SERIAL | UNIT | INVESTIGATING OFFICER | SERIAL | UNIT | APPROVING |
| T.R. ORR | 4580 | 441 | R.N. WILSON | 5003 | 441 | 2869 |

Form 37 CS 21318 Rev 12/77

PAGE 4 OF 4

However offensive the conduct of Leonard Slack may have been in the early morning of July 26, 1986, at a busy public intersection in Seattle and regardless of his subjective purpose, the City's evidence did not establish that he intentionally either *solicited, induced, enticed* or *procured* another to commit prostitution. *See* SMC 12A.10.010(B). Nor did the City's evidence establish that Leonard Slack repeatedly beckoned to, stopped, or attempted to stop or engage passersby in conversation, SMC 12A.10.010(C)(1); that he repeatedly beckoned to, stopped or attempted to stop motor vehicle operators by hailing, waiving of arms or any other bodily gesture, SMC 12A.10.010(C)(2); that he circled an area in a motor vehicle and repeatedly beckoned to, contacted or attempted to stop pedestrians, SMC 12A.10.010(C)(3); or that *he was a known prostitute or procurer,* SMC 12A.10.010(C)(4).

To establish that Leonard Slack was a "known prostitute or procurer," the City is required to establish that "within one year previous to the date of arrest for violation" of the ordinance, he had *"within the knowledge of the arresting officer"* been *"convicted in the Seattle Municipal Court of an offense involving prostitution."* (Italics mine.) SMC 12A.10.010(A)(2). The only evidence in the record tending to support this claim is the following language contained in the police report:

> We drove to the area and observed two black females standing on the SW corner of Boren and Pike. We immediately recognized one of the suspects as a known male prostitute whose photo and name was posted on the East precinct bulletin board. We could not recall the suspect's name, but recognized his face. This suspect was later identified as Leonard Slack.

That statement does not establish that the arresting officer (although recognizing Petitioner Slack from a photograph on the precinct bulletin board as a "known male prostitute") *at the time of the arrest knew that Leonard Slack had been convicted in the Seattle Municipal Court of an offense involving prostitution or procuring within 1 year prior to the date of this arrest. See* SMC 12A.10.010-(A)(2); (C)(4).

From the description in the police report, it must have been a bizarre sight—a "theatre of the absurd"—to see a male person dressed in female's clothing standing at the intersection of Pike Street and Boren Avenue peering into windows and windshields of vehicles stopped for the traffic light. The ordinance requires more, however, than someone merely creating a bizarre spectacle. It requires that the accused person remain in a public place and *intentionally solicit, induce, entice or procure another to commit prostitution. See* SMC 12A.10.010(B).

The evidence of Petitioner Slack's behavior at the scene as narrated in the police report—which constituted the only evidence presented by the City of Seattle—recited that Petitioner Slack and his companion would walk to the edge of the curb as vehicles approached the intersection and stopped at the light or drove through the intersection. As Petitioner Slack's companion would make swinging motions with her hips and other similar motions, the *verbal* and *nonverbal* action of Petitioner Slack himself consisted only of the following:

1. At 0445 . . . Slack bent over from the waist up leaning slightly to his right and looked at the driver.
2. At 0447 . . . Slack leaned over the hood of the pickup and looked through the windshield at the driver.
3. At 0450 . . . Slack [and companion] crossed the street and walked directly in front of the Maverick. As they did so, Slack bent over looking at the driver through the windshield.
4. At 0453 . . . as the vehicle passed them [Slack and his companion] Slack again bent over and looked at the driver.

The Honorable George T. Mattson, in the Superior Court review of the case, correctly noted that "the acts in themselves do not constitute probable cause to arrest per se," but further stated, in upholding the conviction, that "the defendant was engaged in joint conduct with another person."[1] He cited this court's decision in "State [*sic*] v.

---

[1]Although it is not stated in Judge Mattson's order, it is probable that he relied upon the "complicity" ordinance, SMC 12A.04.130. However, that ordinance does not seem applicable under the facts stated in the police report in this case.

Jones, 79 Wn.2d 626." (*See Seattle v. Jones,* 79 Wn.2d 626, 448 P.2d 750 (1971)).

Even assuming, though, that the conduct of Petitioner Slack's companion, as reflected in the police report, could be imputed to him, the City's evidence of the charge against Leonard Slack still falls short of proof beyond a reasonable doubt that he engaged in solicitation of prostitution.

It is apparent from the police report that the City of Seattle could have met its burden of proof by calling the arresting officers as witnesses instead of stipulating for submission of the case on the police report. The officers could have established the extent of their knowledge of Petitioner Slack's convictions for prostitution and could have testified more fully to Petitioner Slack's conduct which constituted the alleged offense.

The police report is well written. Yet it does not establish the evidence against Petitioner Slack beyond a reasonable doubt. It was not written for that purpose. Police officers are not required to be lawyers (although some do have law degrees). They are therefore not expected to write a report which of itself will prove a charge beyond a reasonable doubt. The City Prosecutor, however, is required to be a lawyer and is responsible for the legal sufficiency of a police report to prove a charged offense beyond a reasonable doubt where an accused person agrees to submit a case to the court for decision "on the police report."

A "clean streets" approach to control of crime—including prostitution—may be desirable. However, conduct by persons on the city streets cannot be determined criminal unless the facts supporting criminal charges are proved beyond a reasonable doubt.

It is my belief that my observations on this case are consistent with this court's prior decision in *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). Viewing the evidence in the light most favorable to the prosecution, I see nothing in the police report upon which a trier of fact could conclude that the City of Seattle proved beyond a reasonable doubt

that Leonard Slack committed the offense of prostitution loitering under SMC 12A.10.010.

I therefore respectfully dissent from the majority only to the extent that I would reverse the conviction of Petitioner Leonard Slack for insufficient evidence as presented in this case.

CALLOW, C.J., UTTER, J., and PEARSON, J. Pro Tem., concur with SMITH, J.